IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

JENNIFER PRATT,

        Plaintiff,

v.                                                    Case No. 09-2252-CM-GLR

JOSEPH PETELIN, M.D. and
DANIEL PALEY, M.D.

        Defendants.

## MEMORANDUM AND ORDER

Pending before the Court are two motions: Defendant Paley's Motion for a Qualified Protective Order (doc. 20), and Defendant Petelin's Motion for an Order to Gather Personal Health Information and for Ex Parte Communications (doc. 27). By their respective motions, Defendants request that the Court enter orders that: (1) authorize Plaintiff's health care providers to disclose her medical and mental health records, and (2) authorize defense counsel to conduct *ex parte* interviews of her treating physicians and other health care providers. As set forth below, the motions are granted in part and denied in part.

**I.    Background**

In this action for medical malpractice, Plaintiff alleges that during a thyroidectomy on May 17, 2007, Defendants negligently failed to remove a large, cancerous mass that had been identified in a CT scan and ultrasound-guided biopsy. Plaintiff asserts that, as a result of Defendants' negligence, she was forced to undergo additional surgery and was denied a substantial chance for better recovery. She claims past and future medical expenses, past and future pain and suffering, and loss of earnings. Defendants generally deny her allegations of negligence.

Pursuing their discovery, Defendants asked Plaintiff to sign authorizations for release of her medical records and information from her treating medical and health care providers. Defendants understood from discussions at the Scheduling Conference on September 10, 2009, that they would be provided with these medical authorizations. Plaintiff thereafter provided at least one signed authorization for release of medical information and records. It excluded certain categories of records from the release, such as those relating to treatment for substance abuse, mental health, communicable/venereal, and genetic information. The authorization also restricted itself to medical records relating to her "thyroid, thyroid surgeries/procedures and thyroid cancer treatment" and for a time period April 1, 2007 to the present. By their instant motions Defendants argue that Plaintiff has not provided releases for all her health care providers and medical records. They further protest that her releases contain unreasonable exclusions and limitations. With such restrictions, Defendants contend they cannot reasonably investigate, evaluate, and litigate her claims against them.

## II.     Relief Sought by the Motions

Defendant Paley has filed a Motion for a Qualified Protective Order and submitted his proposed order. Pursuant to Fed. R. Civ. P. 26(c), he requests a "qualified protective order" to grant him complete and equal access to the healthcare information about Plaintiff, including access to her treating physicians. What he seeks, however, does not constitute a protective order. He instead asks for an order authorizing Plaintiff's health care providers to disclose Plaintiff's medical and mental health records and to informally interview her treating physicians. Rule 26(c) does not appear applicable. The Court will consequently construe the motion as one for a court order, pursuant to the Health Insurance Portability and Accountability Act ("HIPAA") and 45 C.F.R. § 164.512(e).

Requesting similar access to medical information, co-Defendant Petelin has filed his Motion for an Order to Gather Personal Health Information and for Ex Parte Communications, pursuant to HIPAA, K.S.A. 65-6001 *et seq*. (for the disclosure of HIV/AIDS information), K.S.A. 65-5601 *et seq*., and 42 C.F.R., Part 2 (for the disclosure of drug, alcohol, and mental health records). Defendant Petelin has also submitted a proposed order in conjunction with the filing of his order. Although the proposed orders submitted by Defendants are not identical, both contain provisions to (1) authorize the health care providers of Plaintiff to disclose her medical or mental health records, and (2) authorize defense counsel to conduct *ex parte* interviews of her treating physicians. Plaintiff opposes both provisions.

### A. Request for Order Authorizing Plaintiff's Healthcare Providers to Disclose Healthcare Information Pursuant to HIPAA

Defendants request an order authorizing Plaintiff's health care providers to disclose and make available for examination and reproduction any and all medical or mental health records of Plaintiff. This would allow them to obtain protected health information about Plaintiff, pursuant to HIPAA and 45 C.F.R. § 164.512(e).

Plaintiff argues that the proposed orders submitted by Defendants are overly broad because they are unlimited in time or scope and would authorize disclosure of any and all of her medical and mental health records from any source. She urges that the HIPAA regulations restrict the information to be disclosed by a health care provider, pursuant to a court order under 45 C.F.R. § 164.512(e)(1)(i), to "only the health information expressly authorized by such order." Thus Plaintiff proposes that, if a court orders disclosure of protected medical records, it may and should set limits on the scope of the disclosure.

Federal regulation 45 C.F.R. § 164.512(e) contains a provision authorizing a health care provider to disclose protected health information for judicial and administrative proceedings. It provides that a covered medical entity may disclose protected health information "in the course of any judicial proceeding" in two circumstances. Under subsection (i) a health care provider may disclose protected health information in the course of any judicial or administrative proceeding "in response to an order of a court, provided that the covered entity discloses only the protected information expressly authorized by such order."[1] Alternatively, under subsection (ii), a health care provider may disclose protected health information in the course of any judicial proceedings in response to a subpoena, discovery request, or other lawful process not accompanied by a court order, if the health care provider receives satisfactory assurance from the party seeking the information that either: (a) reasonable efforts have been made by such party to ensure that the individual who is the subject of the protected health information requested has been given notice of the request, or (b) reasonable efforts have been made by such party to secure a "qualified protective order."[2]

In this case, the Court finds that Defendants seek a court order primarily under subsection (i) of the regulation. Although Defendant Paley's motion asks for a qualified protective order, there is no indication that he has issued a subpoena, discovery request, or other lawful process not accompanied by a court order. The Court does note that both of the proposed orders submitted by Defendants include a paragraph that purports to meet the requirements for a qualified protective order under 45 C.F.R. § 164.512(e)(1)(v)(A)-(B). Plaintiff has asserted no objection to the entry of a "qualified protective order," as that phrase is defined by 45 C.F.R. § 164.512(e)(1)(v).

---

[1] 45 C.F.R. § 164.512(e).

[2] 45 C.F.R. § 164.512(e)(i).

Accordingly, the Court will enter a "qualified protective order" to prohibit Defendants from using or disclosing protected health information for any purpose other than this litigation and to require them to return to Plaintiff or destroy the protected health information at the end of the litigation.

To justify a court order as contemplated by 45 C.F.R. § 164.512(e), Defendants must show they are entitled to the protected health information they seek. By her complaint Plaintiff has placed her physical and mental condition at issue. She alleges she has sustained physical and emotional injury as a result of negligence of Defendants. Plaintiff has asserted no physician-patient privilege to preclude discovery of her medical and healthcare information. K.S.A. 60-427(d) provides, moreover, that "[t]here is no privilege under this section in an action in which the condition of the patient is an element or factor of the claim or defense of the patient . . .." The Court finds that Defendants are entitled to the otherwise protected health information about Plaintiff.

Plaintiff contends, however, that the provisions in the proposed authorizations are overly broad because they contain no limits for the time period and scope of the medical records to be disclosed. She notes that order proposed by Defendant Petelin is directed to "All Hospitals, Clinics, Pharmacies, Physicians, Social Workers, Educators, Psychiatrists, Psychologists, Therapists, Governmental Agencies (State and Federal); All Other Medical Institutions, Practitioners, Health Care Providers, Past and Present." The order proposed by Defendant Paley differs only by excluding Governmental Agencies (State and Federal). Both proposed orders authorize the unnamed providers to disclose and make available for examination and reproduction "any and all medical or mental health records of any type or nature whatsoever and/or any protected health information within your care, custody, or in any manner concerning" Plaintiff.

The Court declines to designate the following as entities specifically authorized to disclose records and information: social workers, educators, and governmental agencies. The order authorizes disclosure by health care providers. If a social worker, educator, or government agency has acted as a health care provider to Plaintiff, the order adequately authorizes such disclosures as they are willing to provide. The Court finds no reason otherwise to list them.

The Court further notes that the proposed order submitted by Defendant Petelin does not limit the covered entities to those providing treatment and/or care to Plaintiff. The order submitted by Defendant Paley does contain this limitation. The Court finds it to be reasonable and will include it in its order.

As already noted, Plaintiff has provided Defendants with a signed HIPAA authorization to release her medical information and records. She limited its scope to records relating only to her "thyroid, thyroid surgeries/procedures and thyroid cancer treatment." The Court finds this limitation too narrow, given the extent and nature of her claims and injuries allegedly resulting from negligence of the Defendants. Her allegations of injury include the following: need for more surgeries and medical care, "inability to work and conduct her life in a normal way, disfigurement, emotional distress, embarrassment, humiliation, depression, irritability and pain and suffering," "severe, permanent, disabling and disfiguring injuries," "physical pain and suffering and resultant mental anguish," "loss of the capacity for the enjoyment of life," and future medical expenses for hospitalization, medical monitoring, medical and nursing care and treatment. These broad allegations establish relevancy for a medical history beyond simply her "thyroid, thyroid surgeries/procedures and thyroid cancer treatment." Defendants are entitled to discovery of medical records relevant to her overall physical, mental, and emotional well-being, the amount of pain and

suffering caused by the alleged malpractice or any other problems, and the extent of her anticipated physical and mental activity.

Plaintiff also objects to the lack of any time period for the medical records sought. In the signed medical releases she provided to Defendants, she authorized the disclosure of her medical records for the time period April 1, 2007 to the present. Apparently she considers that to be the relevant time period because she alleges in her complaint that she started experiencing symptoms in early 2007 and had a CT scan on May 1, 2007. The Court finds April 1, 2007 to be an unrealistic and arbitrary beginning date for the scope of her medical records. Plaintiff has submitted no rational argument for that date. The Court has reviewed the cases from this District that have entered orders to authorize disclosure of protected health information, pursuant to HIPAA. None of them have placed a limitation for a time period for the medical records sought.[3] Given the broad allegations of Plaintiff's injuries, the Court declines to add a time limitation in the order authorizing her health care providers to disclose her protected health information to Defendants.

The Court finds Defendants have generally justified their need to discover the medical and mental health records of Plaintiff. They have also complied with the requirements of 45 C.F.R. § 164.512(e)(1)(i) for obtaining a court order authorizing the disclosure of HIPAA protected health information from Plaintiff's health care providers. The Court will therefore enter the proposed order submitted by Defendant Petelin, with the following modifications: Social workers, educators, and government agencies will be deleted from the list of entities authorized to disclose Plaintiff's

---

[3]*See Harris v. Whittington,* No. 06-1179-WEB (D. Kan. Feb. 15, 2007) (doc. 27); *Hulse v. Suburban Mobile Home Supply Co.*, No. 06-1168 (D. Kan. Oct. 12, 2006) (doc. 26); *McCloud v. Bd. of Dirs. of Geary Cmty. Hosp.*, No. 06-1002 (D. Kan. Aug. 16, 2006) (doc. 48).

protected health information. The order also will specify that it is addressed only to those entities who have provided health treatment and/or care to Plaintiff.

      **B.    Request for Order Authorizing Plaintiff's Healthcare Providers to Disclose Healthcare Information Pursuant to K.S.A. 65-6001 *et seq*., K.S.A. 65-5601 *et seq*. , and 42 C.F.R. Part 2.**

Defendant Petelin asserts that his proposed order complies with K.S.A. 65-6001 *et seq*. for the disclosure of HIV/AIDS information, and K.S.A. 65-5601 *et seq*. and 42 C.F.R., Part 2 for the disclosure of drug, alcohol, and mental health records. He has included the following provision in his proposed order:

> This Order further allows the disclosure of (1) information regarding diagnosis of, treatment for and general status relating to HIV and AIDS pursuant to K.S.A. 65-5601 to 5605; and (2) information regarding diagnosis and treatment of mental, alcoholic, drug dependency and emotional condition pursuant to 42 C.F.R. part 2.[4]

The proposed order submitted by co-Defendant Paley does not include this provision. Nor does it refer to these statutes. At least three decisions from this District,[5] however, have raised the issue of whether proposed HIPAA-compliant orders authorized the disclosure of information regarding diagnosis and treatment of alcoholism or drug dependency, pursuant to 42 C.F.R. Part 2 (Confidentiality of Alcohol and Drug Abuse Patient Records) and 42 U.S.C. § 290dd-2(b)(2)(C).

By virtue of 42 U.S.C. § 290dd-2(a), "records of the identity, diagnosis, prognosis or treatment . . . maintained in connection with any program relating to substance abuse education, prevention, training, treatment, rehabilitation or research, which are conducted, regulated, or directly

---

[4]Ex. A to Def. Petelin's Suggestions in Supp. of Mot. (doc. 28-1).

[5]*Hulse v. Suburban Mobile Home Supply Co.*, No. 06-1168-WEB, 2006 WL 2927519, at *3 (D. Kan. Oct. 12, 2006); *Bohannon v. Baker*, No. 06-1033-MLB, 2006 WL 2927521, at *2-4 (D. Kan. Oct. 12, 2006); *McCloud v. Bd. of Dirs. of Geary Cmty. Hosp.*, No. 06-1002-MLB, 2006 WL 2375614, at *3-5 (D. Kan. Aug. 16, 2006).

or indirectly assisted by any department or agency of the United States," are treated as confidential, to be disclosed only as provided in the statute and implementing regulations. The statute permits disclosure, "[i]f authorized by an appropriate order of a court of competent jurisdiction after application showing good cause therefore, including the need to avert a substantial risk of death or serious bodily harm."[6] The statute further provides that:

> In assessing good cause the court shall weigh the public interest and the need for disclosure against the injury to the patient, to the physician-patient relationship, and to the treatment services. Upon the granting of such order, the court, in determining the extent to which any disclosure of all or any part of any record is necessary, shall impose appropriate safeguards against unauthorized disclosure.[7]

Subpart E of the regulations sets out the procedures and criteria for an order to authorize disclosure of patient substance abuse records for a patient in a pending civil action, where it appears they are needed to provide evidence.[8] An order entered under Subpart E is "a unique kind of court order," and its only purpose is to authorize a disclosure or use of patient information that would otherwise be prohibited by 42 U.S.C. § 290dd-3 and implementing regulations.[9] Under 42 C.F.R. § 2.63(a), a court may enter an order authorizing disclosure of confidential communications made by a patient to a treatment program if "[t]he disclosure is in connection with litigation or an administrative proceeding in which the patient offers testimony or other evidence pertaining to the content of the confidential communications."[10] The regulations permit disclosure pursuant to court

---

[6]42 U.S.C. § 290dd-2(b)(2)(C).

[7]*Id.*

[8]42 C.F.R. §§ 2.61 - 2.67.

[9]42 C.F.R. § 2.61(a).

[10]42 C.F.R. § 2.63(a)(3).

order for noncriminal purposes only if the court determines that good cause exists.[11] To make the good cause determination, the court must find that:

> (1) Other ways of obtaining the information are not available or would not be effective; and (2) The public interest and need for the disclosure outweigh the potential injury to the patient, the physician-patient relationship and the treatment services.[12]

Courts in this District applying these statutes and regulations have noted that there is a strong presumption against disclosing information covered by the statute and regulations, and the privilege afforded to them should not be abrogated lightly.[13]

In this case, the Court is without sufficient information to determine whether any of the health care records sought would be subject to the disclosure restrictions of 42 U.S.C. § 290dd-2(a). Assuming *arguendo* that some of the records are subject to the restriction, the Court finds that Defendants have made no showing to satisfy the statutory and regulatory requirements for disclosure of such information under 42 U.S.C. § 290dd-2(b)(2)(C) or 42 C.F.R. Part 2, subpart E. The Court therefore declines to enter a general order authorizing the disclosure of protected information regarding diagnosis and treatment of alcoholism or drug dependency pursuant to 42 C.F.R. Part 2 (Confidentiality of Alcohol and Drug Abuse Patient Records), and 42 U.S.C. § 290dd-2(b)(2)(C).

Kansas statutes also limit disclosure of certain types of health-related information. K.S.A. 65-5602(a) provides that a patient of a treatment facility has a privilege to prevent treatment personnel from disclosing whether the patient has received treatment or any confidential

---

[11]42. C.F.R. § 2.64(d).

[12]*Id.*

[13]*Bohannon*, 2006 WL 2927521, at *3; *McCloud,* 2006 WL 2375614, at *4.

communications made for the purposes of diagnosis and treatment of a mental, alcoholic, drug dependency and emotional condition. K.S.A. 65-5603(a)(3) contains an exception to this privilege for "any proceeding in which the patient relies upon any of the aforementioned conditions as an element of the patient's claim or defense." K.S.A.65-5603(b) further provides that:

> The treatment personnel shall not disclose any information subject to subsection (a)(3) unless a judge has entered an order finding that the patient has made such patient's condition an issue of the patient's claim or defense. The order shall indicate the parties to whom otherwise confidential information must be disclosed.

As discussed above, the Court finds that Plaintiff has made her mental and emotional condition an issue in this case. Accordingly, the Court finds that the exception to the privilege set forth in K.S.A. 65-5603(a)(3) applies in this case. The Court will permit the inclusion of language allowing disclosure of information regarding diagnosis and treatment of any mental, alcoholic, drug dependency and emotional condition, pursuant to K.S.A.65-5603(a)(3).

The other Kansas statute cited by Defendant Petelin, K.S.A. 65-6001 *et seq.*, prohibits disclosure of information regarding diagnosis of, treatment for and general status relating to HIV and AIDS. It provides that such information "shall be confidential and shall not be disclosed or made public, upon subpoena or otherwise," with certain exceptions. The Court finds that none of the exceptions for disclosure contained in K.S.A. 65-6002(d)(1) apply in this case. The Court will therefore reject any language authorizing the disclosure of protected information under K.S.A. 65-6001 *et seq*.

    **C.**    **Request for Order Allowing *ex Parte* Communications with Plaintiff's Health Care Providers**

Defendants also ask the Court to permit their respective counsel to informally interview the treating physicians of Plaintiff. Their proposed orders expressly authorize *ex parte* communications

with the treating physicians. To comply with 45 C.F.R. § 164.512(e)(1)(v), the proposed orders would also restrict the parties from prohibited misuse or unauthorized disclosure of the protected health care information.

Plaintiff argues that allowing Defendants to engage in *ex parte* communications with her treating medical providers would contravene public policy and the fiduciary nature of the physician-patient relationship. She also suggests that nothing in HIPAA requires a court to authorize defense counsel to engage in *ex parte* communications with her treating physicians. Plaintiff argues that Defendants fail to explain why they need to engage in *ex parte* communications. They have been given access to her relevant medical records, as well as authorizations to obtain the same records independently. Plaintiff also argues that *ex parte* communications with her treating physicians would put her privacy at risk.

Several decisions from the District of Kansas have authorized *ex parte* interviews of treating physicians when a plaintiff has placed his or her physical and mental condition at issue.[14] These decisions describe *ex parte* interviews as informal discovery procedures justifiably less expensive and less time consuming than more formal discovery processes.[15] They reason that to allow *ex parte* communications with fact witnesses, such as treating physicians, creates a just result by allowing

---

[14]*Sample v. Zancanelli Mgmt. Corp.*, No. 07-2021-JPO, 2008 WL 508726, at *1 (D. Kan. Feb. 21, 2008); *Harris v. Whittington*, No. 06-1170-WEB, 2007 WL 164031, at *3 (D. Kan. Jan. 19, 2007); *Bustamante v. Central Kan. Med. Ctr.*, No. 06-1336-WEB, 2007 U.S. Dist. LEXIS 32399, at *2 (D. Kan. May 1, 2007); *Hulse*, 2006 WL 2927519, at *1, 3; *Bohannon*, 2006 WL 2927521, at *1; *McCloud*, 2006 WL 2375614, at *1-2; *G.A.S. v. Pratt Reg'l Med. Ctr., Inc.*, No. 05-1267-JTM, 2006 U.S. Dist. Lexis 95416, at *6 (D. Kan. June 8, 2006); *Bryant v. Hilst*, 136 F.R.D. 487, 489 (D. Kan. 1991); *Clark v. Homrighous*, 136 F.R.D. 186, 188 (D. Kan. 1991).

[15]*Sample*, 2008 WL 508726, at *1 (citing *Bryant*, 136 F.R.D. at 492).

both parties equal, unfettered access to fact witnesses.[16] To prohibit *ex parte* communications would allow one party unrestricted access to fact witnesses, while requiring the other party to use formal discovery that could be expensive, timely, and unnecessary.[17] Witnesses, of course, may refuse to communicate *ex parte* and thus require the parties to resort to formal discovery procedures.[18] Less expensive informal discovery, nevertheless, should be encouraged.[19] For these reasons a court may allow defendants access to the medical records and treating physicians of a plaintiff who has placed his or her physical or mental condition in issue.

Not every defendant in every case, however, has good cause for an order to allow *ex parte* communications with treating physicians.[20] If a plaintiff shows a specific reason for restricting access to her or his treating physicians, such as sensitive medical history irrelevant to the lawsuit, a court may restrict *ex parte* interviews and disclosure of medical records.[21] A general argument, however, that *ex parte* communications would conflict with public policy does not suffice to warrant restriction of such communications.[22]

Despite the precedent in the District of Kansas, allowing *ex parte* communications with treating physicians, Plaintiff urges the Court to deny the instant motions. She argues that HIPAA

---

[16]*Id.*

[17]*Id.*

[18]*Id.*

[19]*Id.*

[20]*Harris*, 2007 WL 164031, at *3 n.10.

[21]*Id.*

[22]*Sample*, 2008 WL 508726, at *2.

precludes the type of *ex parte* communications sought by Defendants, notwithstanding any state law to the contrary. She urges the Court to follow a recent decision of the Western District of the Missouri Court of Appeals. That Court held that 45 C.F.R. § 164.512(e) did not apply to a private meeting between defense counsel and treating medical providers. It reasoned that such a meeting was not "in the course of any judicial or administrative proceeding" because the court did not directly supervise disclosures made under those circumstances.

HIPAA prohibits the disclosure of protected health information, including the verbal disclosure by a covered health care provider. Neither HIPAA nor any regulations implementing it, however, expressly authorize or prohibit *ex parte* communications with health care providers. The decisions of the District of Kansas that have addressed the issue have concluded that *ex parte* interviews are not prohibited by HIPAA, if the party seeking the interview complies with the procedural requirements of the statute for securing medical information from health care providers.[23] These decisions have required that the provider be first advised that he or she may decline to be informally interviewed. The Court finds no reason to depart from the precedent allowing *ex parte* interviews of treating physicians, where the medical condition of Plaintiff is an issue in the case, subject to compliance with HIPAA's procedural requirements for disclosure of protected health information.

The opinion cited by Plaintiff, *State of Missouri v. Messina*,[24] holds that the HIPAA regulation contained in 45 C.F.R. § 164-512(e) does not apply to a private meeting between defense counsel and treating medical providers for a plaintiff, because such meeting was not "in the course

---

[23]*Harris*, 2007 WL 164031, at *2.

[24]2009 WL 3735919 (Mo. App. W.D. Nov. 10, 2009).

of" any judicial or administrative proceeding. Such a meeting, or *ex parte* interview, is not supervised by the court and thus not considered "in the course of" a judicial proceeding. The *Messina* case cited by Plaintiff, of course, does not create controlling precedent for this Court. The Court declines to adopt the holding that *ex parte* interviews are not considered "in the course of " a judicial proceeding. Although not directly supervised by the Court, an *ex parte* interview of a plaintiff's treating physician nevertheless proceeds as incidental to a pending law suit and to that extent may be regarded as "in the course of" a judicial proceeding. The HIPAA regulation for disclosure in the course of a judicial proceeding thus can apply to the disclosure of protected health care information during an *ex parte* interview with a health care provider for a plaintiff.

Following the precedent in this District, the Court will allow defense counsel to conduct *ex parte* interviews of Plaintiff's treating physicians, as long as they comply with the HIPAA regulations for the disclosure of Plaintiff's protected health information. As discussed above, the Court will modify and enter the proposed order submitted by Defendant Petelin. It will apply to both defendants.

IT IS THEREFORE ORDERED THAT Defendant Paley's Motion for a Qualified Protective Order (doc. 20) and Defendant Petelin's Motion for an Order to Gather Personal Health Information and for Ex Parte Communications (doc. 27) are granted in part and denied in part, as set forth herein. The Court will enter a modified version of the Order for Inspection and Reproduction submitted by Defendant Petelin.

Dated this 4th day of February 2010, at Kansas City, Kansas.

s/ Gerald L. Rushfelt
Gerald L. Rushfelt
U.S. Magistrate Judge
