## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| JENNIFER PRATT, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 09-CV-2252-GLR |
| | ) | |
| JOSEPH PETELIN, M.D., | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM AND ORDER

The Court has before it Defendant Joseph B. Petelin, M.D.'s Renewed Motion for Judgment as a Matter of Law or, Alternatively, Motion for New Trial (ECF No. 154).  The case presents a claim for damages for personal injury from alleged negligence and medical malpractice.  Upon consent of the parties, the case proceeded to trial by jury before the undersigned magistrate judge, on April 5, 2011.  On April 8, after oral arguments, the Court overruled Defendant's Motion for Directed Verdict (ECF No. 143).  On April 11, 2011, the jury returned a verdict in favor of Plaintiff and against Defendant.  It awarded her damages in the total amount of $153,000.  The Court entered judgment accordingly upon the verdict.  On July 14, 2011, after oral arguments upon the present motion for judgment or, alternatively, for new trial, the Court took it under advisement.  For the following reasons it finds that both the main and alternative motions should be overruled.

### I.    Motion for Judgment as Matter of Law

The Court will first address the renewed motion for judgment as a matter of law.  The arguments of Defendant simply do not support the motion.  There was ample evidence for the jury to find Defendant professionally negligent in performing surgery and failing to remove from Plaintiff all cancerous thyroid tissue.  Dr. Barry Wenig, M.D. gave expert testimony as to the standard of care

required for the medical procedure.  And he specifically testified that Defendant failed to uphold that

standard, by failing to find and remove all of the cancerous mass.  Plaintiff herself and several other

witnesses testified as to her personal injuries and damages.  The evidence was adequate to sustain

the verdict of the jury.

## II.    Motion for New Trial

Defendant seeks a new trial upon several grounds.  First he contends the Court erred in its

Instruction No. 9 to the jury.  That instruction provides as follows:

### INSTRUCTION NO. 9

The plaintiff, Jennifer Pratt, claims that she sustained injuries and damages
due to the fault of the defendant, Joseph H. Petelin, M.D. in the following respects:
during the May 17, 2007 surgery by failing to remove all thyroid tissue, including a
cancerous mass, failing to remove lymph nodes, failing to timely review the May 18,
2007 pathology report, and failing to consider plaintiff's post-surgical symptoms.
The plaintiff has the burden to prove that her claims are more probably true
than not true.  It is not necessary that each of you agree upon a specific claim of fault.
The defendant denies that he was at fault and generally denies plaintiff's
claims.

Defendant did not object to the inclusion in Instruction No. 9 of the first claim, "failing to

remove all thyroid tissue."  As hereinafter discussed, the evidence, including expert testimony, was

adequate to support this as the initial and principal ground of negligence.

At trial Defendant did object to Instruction No. 9 upon grounds that the evidence was insuf-

ficient to support the latter three of her four claims of negligence, i.e. "failing to remove lymph

nodes, failing to timely review the May 18, 2007, pathology report, and failing to consider plaintiff's

post-surgical symptoms."  For the reasons stated by Plaintiff in her memoranda, however, the Court

believes sufficient evidence was elicited to support the inclusion of those three claims.  Dr. Wenig

did testify that the standard of care applicable to a thyroidectomy would require a surgeon (1) during

2

surgery to search for and remove cancerous lymph nodes and (2) after surgery to timely review the pathology report.  It is true that the witness expressed no specific opinion  that Defendant breached the standard of care in these two respects.  The Court believes there was sufficient evidence, however, both from Dr. Wenig and from the medical exhibits and expert witnesses called by Defendant, including Dr. Tsui, to allow a jury reasonably to infer negligence for failing to locate and remove lymph nodes and to timely review the pathology report.[1]

With regard to the claim that Defendant was negligent in "failing to consider plaintiff's post-surgical symptoms," the Court agrees with the contention that the "common knowledge" exception applies and that expert testimony was not required.  Plaintiff herself testified to the post-surgical symptoms she experienced and reported to Defendant twelve days after the surgery: hoarseness; remaining presence of a mass she could still feel in her throat where she had felt it before surgery; increasing difficulty in breathing, swallowing, and speaking; choking.  Two non-expert witnesses, Maureen Holthaus and Michelle Briscoe, respectively the mother and a friend of Plaintiff, observed these conditions.  Several weeks later Plaintiff repeated these complaints to Defendant and advised they had become worse.  Notwithstanding these complaints and a post-operative pathology report that indicated a residual mass, Defendant advised Plaintiff that a remaining cancer was "impossible."  At her insistence, he performed a cursory examination in the doctor's lounge at the hospital and reassured her she had no need for further testing.

For several other and perhaps more basic reasons, however, the Court believes that Instruction No. 9 was not in error.  Defendant does not attack the adequacy of the evidence for the

---

[1]With respect to the testimony of Dr. Wenig, see ECF No. 154-1, pp. 4, 7, 8, all with regard to lymph nodes, and p. 9 with regard to review of the pathology report.

claim of negligence in "failing to remove all thyroid tissue." This was the principal ground of alleged negligence. It was the thrust of the entire case. The additional claims for failing to remove lymph nodes, failing to review the pathology report, and failing to consider post-surgical symptoms, in the opinion of the Court, addressed conduct that was secondary and incidental to any initial failure to discover and remove all cancerous thyroid tissue. Viewing all the evidence together, the Court believes the jury could hardly have found Defendant professionally negligent upon any of the latter three claims, without having found him first negligent for failing to find and remove all the cancerous tissue in or adjacent to the thyroid gland itself. Instruction No. 9, moreover, characterizes these alleged failures only as what Plaintiff claims. It then reminds the jury that, "[t]he plaintiff has the burden to prove that her claims are more probably true than not true."

The objection to Instruction No. 9 might carry some weight in a case of true comparative fault, in which a jury must determine not only if Defendant was negligent, but also the per cent of negligence in comparison with another allegedly negligent party or non-party. But that is not the case here. Defendant here is the only one charged with negligence. If he was negligent in any respect, he was thus 100 per cent liable for the purposes of a verdict. From the evidence provided by his own medical experts, the jury was free to find him not negligent, notwithstanding the undisputed fact that he failed to find and remove the cancerous tissue in its entirety. Having found him negligent, however, it could hardly have found negligence for failing to find and remove lymph nodes, without finding him initially negligent for not finding and removing all the thyroid tissue. That initial negligence established liability 100 per cent, whether or not he would have been subsequently negligent in any of the other three respects claimed by Plaintiff. If indeed there was any error in Instruction No. 9, as Defendant contends, the Court believes for these reasons that it was harmless

4

error.

Defendant has cited several cases to support his motion.  The Court will address them as follows:  *Puckett v. Mt. Carmel Regional Medical Center*, 290 Kan. 406, 228 P.3d 1048 (2010) involved an improper jury instruction as to intervening cause.  The case recognizes "a line of Kansas cases stating that a material error in jury instructions should be presumed prejudicial."[2]  As *Puckett* notes, "[t]hese cases suggest prejudice is presumed when a jury instruction that potentially shifts liability is not supported by the evidence."[3]  The instant case, however, does not involve an instruction that erroneously shifts liability to someone else or to some intervening cause.  Although Defendant disagrees as to the evidentiary support for three of Plaintiff's allegations, the evidence does support the finding of negligence, which is the only theory of liability in this case.  The Court finds that *Puckett* is distinguishable from this case and, therefore, not applicable.

Defendant also cites *Farrell v. Klein Tools, Inc.*, 866 F.2d 1294 (10th Cir. 1989).  That case involved an erroneous jury instruction as to a defense and the use of a general verdict, rather than a special verdict.  The Court for the Tenth Circuit held this procedure to be prejudicial error.  It recognized and applied as a general rule, " that when one of two or more issues submitted to the jury was submitted erroneously, a general verdict cannot stand because it cannot be determined whether the jury relied on the improper ground."[4]

Notwithstanding its holding, *Farrell* also recognized that in some circumstances the courts

---

[2]209 Kan. at 441, 228 P.3d at 1071.

[3]*Id.* at 441, 228 P.3d at 1072.

[4]866 F.2d at 1299.

could apply "a harmless error test, using a reasonable likelihood standard."[5]  The Court does agree, as Defendant has contended, that the verdict form in the instant case is for a general verdict on the issue of liability.  But unlike *Farrell* and notwithstanding the several particular claims of Plaintiff, the instant case relies upon only a single legal theory of liability, i.e., negligence.  Unlike *Farrell*, the instant case does not involve submitting the case to the jury upon two alternative legal theories, one of which is erroneous.  If *Farrell* has any application here, the Court believes it lies in its recognition that the principle of harmless error may apply when a general verdict is used:  Even general verdicts "may be upheld if it appears that the errors committed were not vital, or prejudicial to the substantial rights of the objecting party."[6]  *Farrell* further noted that "a harmless error theory" could save a verdict if the properly submitted claim "were strongly and clearly supported by the record" and the court was "reasonably certain that the jury was not significantly influenced by issues erroneously submitted to it."[7]  In the present case the Court does find that the claim of negligence is "strongly and clearly supported by the record" and is convinced that the jury was not significantly influenced by issues, if any, erroneously submitted to it.  This Court has no disagreement with the principal holding in *Farrell*, but finds that its alternate language, as thus quoted, provides the applicable law for this case.

The present controversy over Instruction No. 9 might have been avoided, had the Court used a special verdict form, by which the jury would have found the presence or absence of negligence as to each of the four claims asserted by Plaintiff.  Defendant did not propose or request the use of

---

[5]*Id.*

[6]*Id.* (citations and internal quotation marks omitted).

[7]*Id.* (citations omitted).

a special verdict.  The Court did not otherwise consider it.  Plaintiff has cited a case from the Ninth

Circuit Court of Appeals, addressing the issue:  *McCord v. Maguire*, 873 F.2d 1271 (9th Cir. 1989).

"When a general verdict may have rested on factual allegations unsupported by substantial evidence,

we will uphold the verdict if the evidence is sufficient with respect to any of the allegations."[8]

Parties who want to challenge the evidentiary sufficiency of "some, but not all, specifications of

negligence" must ask for a special verdict as to each negligence claim.[9]  "Any other rule would

unnecessarily jeopardize jury verdicts that are otherwise supported by the record on the more

theoretical possibility that the jury based its decision on unsupported specifications."[10]  The Court

believes that the rationale of *McCord* applies here.

Defendant further assigns for error the denial of his oral motion to strike certain undisclosed

expert testimony.  Upon cross-examination at trial Dr. Barry Wenig as an expert witness expressed

the opinion that the prognosis for Plaintiff was affected by the alleged negligence of Defendant.

Specifically Dr. Wenig noted that she had a metastatic lymph node, found in the second surgery,

which indicated a change in her prognosis.  In deposition before trial, however, the doctor had testi-

fied that her prognosis remained unchanged, notwithstanding the need for a second surgery.  Dr.

Wenig acknowledged that his pretrial disclosure had not mentioned a change in prognosis and that

Defendant would not have known before trial that the witness held that opinion.  Defendant contends

he was thus surprised and incurred prejudice, because the doctor's pre-trial disclosure, pursuant to

---

[8] 873 F.2d at 1273-74.

[9] *Id.* at 1274.

[10] *Id.*

Fed. R. Civ. P. 26(a)(2)(B), omitted this opinion.[11]

For several reasons the Court believes it was not error to deny the motion to strike. First, contrary to the defense argument, the Court does not find that Plaintiff violated any duty of disclosure under Rule 26. Defendant has identified nothing from the testimony of Dr. Wenig upon his direct examination that even addresses the subject of her prognosis. After reviewing the transcript of that testimony (ECF No. 154-1), moreover, the Court also finds no reference to the prognosis for Plaintiff.[12] Defendant thus complains of testimony that he himself elicited upon his cross-examination of the doctor. Dr. Wenig understandably conceded that his written report did not contain the offending statement about prognosis; because it was not to be a part of his direct testimony. The Court understands the requirement of Rule 26(a)(2)(B) to apply to the anticipated testimony of the expert upon direct, not cross-examination.[13]

Second, Defendant has pointed to nothing from the written report of Dr. Wenig (ECF No. 119-2), filed pursuant to Fed. R. Civ. P. 26(a)(2)(B), that shows any material inconsistency with his testimony at trial, either upon direct or cross examination. After reviewing the report, the Court also finds no inconsistency. It also finds no specific reference to a prognosis for Plaintiff. One may infer some conclusion about prognosis, but the inference does not help the Defendant. If anything, it

_____

[11]See ECF No. 154-1, pp. 26 and 27, for the relevant testimony and the motion by Defendant to strike.

[12]The Court finds in the direct testimony one brief reference to how a failure to find a cancerous mass can result in its metastasis and growth and thus "make the prognosis worse." *See* ECF No. 154-1 at 8. But the Court does not see this statement as a specific reference to the prognosis for Plaintiff with respect to metastatic lymph nodes. Defendant, moreover, did not object to this testimony.

[13]*See* Fed. R. Civ. P. 26(a)(2) (1993 amend.).

would infer some change of prognosis, due to the need for a second surgery.

Defendant did elicit from Dr. Wenig testimony that Plaintiff had a metastatic lymph node, which he believed was not mentioned in his report. The witness apparently was mistaken in that belief. His report does refer to a failure of Defendant with regard to lymph nodes: "3. Dr. Petelin failed to locate and remove all lymph nodes in the immediate vicinity, as the standard of care requires."[14]

Third, as noted, Defendant has not shown and the Court has not otherwise found that Plaintiff violated any duty of disclosure under Rule 26(a) with regard to the disputed testimony of Dr. Wenig. If indeed there was any such violation, the Court believes it was either substantially justified or harmless, within the meaning of Fed. R. Civ. P. 37(c)(1).

Fourth, at trial Defendant had the opportunity to impeach Dr. Wenig with any inconsistent statement he may have made, whether from his disclosure or his deposition. Upon cross-examination he admitted that in deposition he had not testified that the prognosis of Plaintiff was changed by the presence of metastatic lymph nodes. The Court believes that impeachment through cross-examination, and not striking the allegedly offensive testimony, was the remedy available to Plaintiff.

Defendant finally asserts the Court erred in admitting into evidence at trial Plaintiff's Exhibit 21. It consists of one page, entitled "MEDICAL BILL SUMMARY." It shows charges by University of Kansas Hospital of $26, 679.82, of which $15,808.39 were paid, and by KU Physicians for $13,088.00, of which $4,001.56 were paid (thus with respective totals of $39,767.82 and $19,809.95). Defendant had stipulated to the use of the exhibit to show the amounts of the charges,

---

[14]*See* ECF No. 119-2 at 5.

but had not waived objections as to reasonableness and necessity of all charges.  He contends that Plaintiff failed to show that the charges were reasonable and necessitated by the negligence of Defendant, as required by Kansas law.  He argues that Dr. Wenig failed to vouch for each charge as an expense caused by Defendant.

Upon direct examination Dr. Wenig testified he had reviewed the medical bills and was familiar with the charges.  Upon a *voir dire* examination of the witness, Defendant elicited testimony that the witness had not reviewed every individual charge included in the summary.  Consequently, Dr. Wenig did not know if every such charge was reasonable and necessary.  He had not considered whether or not the charges might include some items unrelated to the alleged negligence of Defendant, e.g., two inhalers provided by the "KU Hospital" and the medications Lexapro and Synthroid.  Defendant objected to the admission of the exhibit for lack of foundation and for failure of the witness to show sufficient familiarity to establish reasonableness of the charges.  Upon further *voir dire* Plaintiff elicited from Dr. Wenig testimony that the medical bills were necessary and reasonable, that he had reviewed a significant percentage of them, and that he believed "that the numbers are generally what one would charge for the procedures that were performed."  The Court overruled the objection of Defendant and admitted Exhibit 21 into evidence.

The Court believes the testimony of Dr. Wenig provided sufficient foundation for the admissibility of Exhibit 21.  He testified that he had reviewed the medical bills and that they were reasonable and necessary in their totality for the services performed as a result of the alleged negligence of Defendant.  Defendant could have pursued further, either by cross-examination or rebuttal evidence, the suggested questionability of some of the charges.  But there was no effort to show the individual amounts for any questionable items.  The Court believes the objection by Defendant

10

addressed the weight of the testimony, rather than its admissibility.  If it erred in allowing Exhibit 21 into evidence, the Court believes it was harmless error.

In contrast to the incurred medical expenses of $39,767.82, of which  $19,809.95 were paid by Plaintiff, the jury awarded her $15,000.  Were the Court to find error in admitting the exhibit, the appropriate remedy would be to reduce the judgment by $15,000, not to order a new trial.

**III.     Conclusion**

In summary, the Court finds no merit in the renewed motion for judgment.  It also finds no error in the submission of Instruction No. 9 to the jury.  It finds no error in not striking the testimony of Dr. Wenig with regard to the prognosis for the Plaintiff as it related to lymph nodes.  And finally, it finds no error in overruling the objection of Defendant to Exhibit 21, the summary of the medical bills.  If error did exist in any respect, the Court finds it was harmless and not sufficient to justify either judgment for Defendant or a new trial.  For these reasons the Court overrules Defendant Joseph B. Petelin, M.D.'s Renewed Motion for Judgment as a Matter of Law or, Alternatively, Motion for New Trial (ECF No. 154).

**IT IS SO ORDERED.**

**Dated in Kansas City, Kansas on this 26th day of August, 2011.**


S/ Gerald L. Rushfelt
Gerald L. Rushfelt
U.S. Magistrate Judge